UNITED STATES BANKRUPTCY COURT
FOR THE
WESTERN DISTRICT OF KENTUCKY

In re:  David E. Clark

        Debtor                                      CASE NO. 07-50903

                                                               CHAPTER     7

Mindy Machanic

        Plaintiff

vs.

David E. Clark

        Defendant                               Adv. Proc. No. 08-05007

**MEMORANDUM-OPINION**

THIS ADVERSARY PROCEEDING is before the Court after the conclusion of a trial on the merits of the cause of action brought by Plaintiff against Defendant under 11 U.S.C. §523(a)(2)(A). For the reasons set forth below, the Court determines that Defendant's debt to Plaintiff, if any, is dischargeable. By virtue of 28 U.S.C. §157(b)(2)(J) this is a core proceeding. The following constitutes the Court's Findings of Fact and Conclusions of Law pursuant to Fed. R. Bankr. P. 7052.

FINDINGS OF FACT

Over the course of four days in November 2005, Plaintiff traveled to Paducah, Kentucky from her home in Arizona and looked at 25 to 30 houses with the intention of relocating to Paducah. One of the houses that she looked at, a 100 year old home located at 217 Fountain Avenue (the "House"), was owned by Defendant.

Upon viewing the House, Plaintiff received a standard form Seller Disclosure of Property

Condition (the "Seller's Disclosure") that had been completed by Defendant. The Seller's Disclosure consists of more than sixty questions regarding potential problems with a home, categorized into "house systems," "foundation/structure/basement," "roof," "land/drainage," "boundaries," "water," "sewer system," "construction/remodeling," "homeowner's association," and "miscellaneous." A homeowner completing the form must answer the question with either "yes," "no," or "unknown," with some limited space to provide additional explanation.

Defendant testified, credibly, that when he filled out the Seller's Disclosure, he believed that he was only to identify problems that he became aware of during the time that he owned the House.[1] Because he did not become aware of any problems arising in the House during the two and one-half years in which he lived in the House, Defendant did not identify any problems with the House in the Seller's Disclosure. Defendant also testified, credibly, that he was in poor health during much of his tenure at the House and, consequently, could not inform himself of the House's condition. For example, he was not able to go up into the attic or down into the crawlspace beneath the House and he rarely went into the House's detached garage.

Plaintiff was able to view the exterior and interior of the House, but only the exterior of the detached garage.[2] She observed a few problems–a badly cracked porch window, minor cracks in the brick exterior, sloping floors. Plaintiff also received a written description of the House, which included some photographs of the House. She made a few photographs of the House herself.

Before returning to Arizona, Plaintiff offered to purchase the House for $165,000.00. Although Defendant had been asking $175,000.00 for the House, Defendant accepted Plaintiff's offer.

Prior to closing on the purchase of the House, Plaintiff obtained a formal inspection of the House from a professional home inspection company, Pillar to Post Inc. (the "Inspector"). The Inspector noted several items of required or suggested repair or maintenance. For example, in the

---

[1]The Seller's Disclosure states, among other things, as follows: "This disclosure is based solely on the seller's observation and knowledge of the property's condition and the improvements thereon.....The seller has owned this property since 2002 (date) and makes these representations only since that date."

[2]Although she was given a key to the garage, she testified that she could not make the key work.

Report Commentary portion of its report, the Inspector noted that exterior mortar joints were soft and crumbling in several areas and recommended repointing. The Inspector also noted that windows throughout the House were not operational and required "repair/maintenance to function properly." The Inspector also noted several structural problems with the House requiring correction, including damaged floor joists, beams and posts, noticeably sloping floors and various wall and floor cracks. There were also numerous other problems or potential problems noted with plumbing, wiring and appliances. Plaintiff asked the Inspector to return to the House specifically to examine the fireplaces. The Inspector noted that none of the House's six fireplaces was functioning and, indeed, one had been bricked over.

Despite the problems noted in the Inspector's reports, and despite Defendant's refusal to correct those problems, Plaintiff consummated the purchase of the House in January 2006 without personally making another visit to the House. Plaintiff testified that, based upon her experience in purchasing five homes previously, she considered the points raised in the Inspector's reports relatively minor and within her means to address.

Unfortunately, upon taking possession of the House, Plaintiff began to encounter what she considered major unexpected problems with the House. For example, Plaintiff testified that when she arrived at the House, she found that there was no heat in the downstairs portion and that there was a large hole in the dining room wall. She also noticed that every window was either cracked or broken. Around a month after moving in, the detached garage flooded following a four-day rainstorm. Plaintiff also testified that there were problems with the structure, wiring and plumbing of the House and that most of the House's windows would not open.[3] She also testified that she discovered evidence of a past fire at the House. Plaintiff had many of these problems repaired, at some expense, including having all of the windows and doors of the House replaced.

Plaintiff ultimately filed suit against Defendant and other parties allegedly involved in the sale of the House in McCracken County, Kentucky, Circuit Court. Not long after Defendant filed his Chapter 7 bankruptcy petition, Plaintiff initiated this Adversary Proceeding on February 4, 2008.

## CONCLUSIONS OF LAW

---

[3] Defendant testified that the windows opened when he lived in the House.

Plaintiff seeks a determination from the Court that Defendant should be required to reimburse her for the money she has spent and will need to spend to correct alleged undisclosed problems with the House. She asserts that those damages would represent a non-dischargeable debt to her under 11 U.S.C. §523(a)(2)(A).[4]

To obtain an exception from discharge under 11 U.S.C. § 523(a)(2)(A), a plaintiff-creditor must prove by a preponderance of the evidence, each of the following essential elements: (1) the debtor obtained money through a material misrepresentation that, at the time, the debtor knew was false or made with gross recklessness as to its truth; (2) the debtor intended to deceive the creditor; (3) the creditor justifiably relied on the false representation; and (4) the creditor's reliance was the proximate cause of loss. *See In re Rembert*, 141 F.3d 277, 280-81 (6th Cir. 1998). The debtor's intent is ascertained by looking at the totality of the circumstances, and all exceptions to discharge are to be strictly construed against the creditor. *Id.* at 281-282.

Plaintiff asserts that the Defendant intentionally or wantonly made false representations in the Seller's Disclosure that there were no problems with various elements of the House, and that she reasonably relied upon those representations to her financial detriment. The Court concludes otherwise.

First, Plaintiff utterly fails to show that Defendant intentionally or wantonly made any misrepresentation in the Seller's Disclosure. The Court has found that Defendant completed the Seller's Disclosure to the best of his ability, based on his limited knowledge of the condition of the House. He simply was not aware of the issues with the House that Plaintiff considered major problems.[5] Moreover, his lack of awareness of the alleged problems is understandable in light of his health problems during his tenure at the House. Thus, he cannot be said to have been intentionally deceptive or to have acted "with gross recklessness" in completing the Seller's Disclosure.

---

[4]At the trial upon the merits, the Court–with the parties' concurrence–decided to bifurcate the proceedings into a liability phase and damages phase. Only if the Court found that Defendant's actions rendered any damages owed to Plaintiff non-dischargeable would a second hearing be held to determine the amount of the non-dischargeable "debt."

[5]Because the issue of damages has been deferred, the Court has no opinion as to whether such issues were indeed major problems or that Plaintiff was reasonable in expending the amount of money she allegedly expended in trying to correct them.

Second, even if Plaintiff had provided persuasive evidence of Defendant's alleged deceptiveness or gross recklessness, the Court could not conclude that Plaintiff's reliance upon Seller's Disclosure was the proximate cause of her loss or even that such reliance was justified. Plaintiff has significant experience in the purchase of homes, having done so on five previous occasions. She used that experience in purchasing the House. She engaged a professional to inspect the House, upon whose report she relied in deciding to purchase the House. The Inspector noted several problems and/or areas of potentially required maintenance. Despite this, Defendant purchased the House without making further inquiry of Plaintiff and without personally taking a second look at the House. In particular, Defendant chose not to make a final "walk through" of the House just prior to closing. If she had done so, many, if not all of the alleged problems with the House would have been self-evident, such as the large hole in the dining room wall and the cracking in the garage floor. Under the circumstances, the Court cannot conclude that Plaintiff reasonably relied upon the Seller's Disclosure or that such reliance was the proximate cause of her alleged loss.

Because Plaintiff has failed to prove that Defendant subjectively intended to deceive her or that she justifiable relied upon any allegedly false representations, her claim under 11 U.S.C. §523(a)(2)(A) must fail for failure to carry the required burden of proof. A separate Order consistent with the foregoing has been entered in accordance with Federal Rule of Bankruptcy Procedure 9021.